## Dorworth's Estate

*George K. Brecht*, for petitioner; *Dennis A. O'Neill*, for remonstrant.

HOLLAND, P. J., September 21, 1933.—On August 1, 1933, the petition of John H. Dorworth, administrator of the above deceased, who died intestate, was filed, setting forth the usual and necessary averments and praying for leave to sell the real estate therein described at private sale for the payment of debts to one J. Wayne Heebner for $2,525 cash. From the petition it appeared that the interested parties are a brother, and nephews, nieces, grandnephews, and grandnieces. The property is assessed for taxation at $1,000, and the affidavits of two real estate experts, as required, state that the price of $2,525 is full and fair and a better price than could be obtained at public sale. It appeared that the property was in bad repair and at present uninhabitable.

The sale was duly advertised as required by the statute and rule of court, and due proof thereof filed September 1, 1933. On September 1, 1933, the day fixed for a hearing by the preliminary decree, no objections or exceptions to the final consummation of the sale were made or filed by any creditor or interested distributee, nor were any such made or filed prior thereto.

On September 1, 1933, the date of the hearing, an offer in writing to pay $2,700 for the property was, however, presented to the court by one Joseph A. Byrne, together with the check of Dennis A. O'Neill, Esq., his attorney, for $270, or 10 percent of the offered purchase price, and the offer agreed to pay the balance in 30 days or at such time as the court might direct. This written offer is a part of the record. The question of the check not being certified was waived at the argument. A hearing was had September 6, 1933.

At the hearing, it appeared that the deceased previous to his death had been adjudged a weak-minded person by the Court of Common Pleas of Montgomery County, about April 1933, and Norristown-Penn Trust Co. appointed guardian of his estate. Sometime in May 1933, the said guardian began the effort to sell this real estate, and finally agreed to sell it for $2,525 cash to J. Wayne Heebner, who was also the purchaser at the sale now under consideration for approval. This was the highest cash offer and was approved by the court of common pleas of this county, but decedent died July 1, 1933, before the sale was consummated.

On May 27, 1933, the trust company received an inquiry from Mr. Byrne about the property. It immediately, on the same day, which was Saturday, sent a special delivery letter to him that the property was to be sold for $2,525 cash, and it would be necessary for him to come to the company's office the following Monday if he wished to make an offer. He came the following Wednesday, talked the matter over and said that "he might go to $2,600", but he could not pay cash and asked whether it would take part of the purchase price in a mortgage. He also said he doubted if he could negotiate a loan. He at no time made any definite offer to the guardian, either for cash or otherwise.

Having heard of decedent's death, he wrote Mr. Brecht, the attorney for the administrator, inquiring about the property under date of July 20, 1933. Mr. Brecht replied to him under date of July 22, 1933, to the effect that they already had a purchaser for the property but that he and the administrator would be glad to consider a higher price. The letter stated: "If you wish to state your highest cash price for it, I shall be glad to submit it." He was also informed in the letter that the terms of the sale must be cash.

After receiving Mr. Brecht's reply to his letter, Mr. Byrne made a visit to Mr. Brecht's office in Norristown but did not find him in. He left no offer with the person in charge of the office, nor did he make any effort to see Mr. Brecht thereafter. Nor did he see the administrator. As above indicated, the petition to sell the property to Mr. Heebner at private sale was filed August 1, 1933. Thereafter, and shortly before August 16, 1933, Mr. Byrne addressed a letter to the administrator inquiring about the property, in reply to which, under date of August 16, 1933, the administrator wrote Mr. Byrne stating that the proceedings had already been started, that the hearing was fixed for September 1, 1933, and that if he desired to make a substantially increased offer he must do so at the hearing in court. This letter to the administrator and his reply thereto were the only communication whatever that Mr. Byrne had with the administrator.

We find that the notice and advertising as required by the statute and rules of court have been strictly complied with, and there is no possible objection to the absolute confirmation and authorization of the proposed private sale except that it might be prevented for any reason by the offer of Mr. Byrne.

Section 16 (m) 3 of the Fiduciaries Act of 1917 provides: "On the day fixed by such order [the preliminary decree] and notice for authorizing or directing such private sale, any creditor of such decedent, or party interested as heir,

devisee, or intending purchaser, . . . may appear and object to such private sale on account of the insufficiency of the price, and, if such objection be sustained, may offer to give or pay a substantial increase for such property; and the court, at its discretion, may thereupon authorize or direct such sale, or refuse to authorize or direct the same, and accept any substantially increased offer, and may authorize the sale of such property to such new bidder upon compliance with the conditions of sale and giving such security as shall be directed by the court".

It will be observed that the act clearly places an "intending purchaser" in the category of a "party interested", and such intending purchaser therefore has a distinct standing in court to object to the sale on the ground of his willingness to bid a higher price for the property. It will also be observed that the objection to the sale must be sustained first and consideration given to the substantial increase offered thereafter. The act says: "if such objection be sustained, [the intending purchaser] may offer to give or pay a substantial increase for such property". He is permitted, therefore, to offer a substantial increase, conditioned upon the objection being sustained. The objection to the private sale may be made on account of the insufficiency of price. If this is the objection, the intending purchaser must therefore in the first place show that the price is insufficient. This is controverted in this case by the affidavits of the two real estate experts, who unqualifiedly swear that the proposed cash price of $2,525 is full and fair and more than it would bring at public sale, which is proof to the court that the price, as it now stands, is not an insufficient price. However, the very fact that an intending bona fide purchaser is willing and able to pay an increased price and makes such offer in open court would be some evidence of the insufficiency of the price of the proposed sale under consideration, provided, however, that that offer is an offer of a substantial increase. Is therefore the offer of this intending purchaser of $2,700 over $2,525 a "substantial increase"?

The increase is $175, or less than 7 percent of $2,525, which price is sought to be confirmed. It is plain that in deciding this question this section of the act leaves it in the discretion of the court. Assuming that the offer of the intending purchaser is for cash, would it be regarded as a substantial increase? In the exercise of our discretion, we find that it is not. In our search for a comparative precedent, we find that in Early's Estate, 24 Dist. R. 153, Judge Dallett held that the minimum of a 10 percent increase on a $30,000 price would be required to qualify as a substantial increase in the discretion of that court. Certainly, if it was a proper exercise of discretion to require a 10 percent increase on a $30,000 transaction, this court would be justified in requiring an increase of at least 10 percent or more on this smaller transaction of $2,525. The theory of this discretion in the court and how it should be exercised is plain.

The first consideration is for the estate to get as much money for the property as possible, and therefore the offer of an increase above the purchase price under consideration is the first element to consider. However, there are other considerations. In the interest of the prompt settlement of an estate and the payment of creditors, a responsible lower bidder is conceivably a better bidder than an irresponsible and uncertain higher bidder. In the first case the price is immediately available, and in the second case there may be delay in settlement, or the consideration may not all be in cash, or the sale may fail altogether, in which case both the second purchaser and the first bidder as a purchaser are lost. The court cannot entertain a trifling increase, nor can it permit a lagging or delay in the compliance with the terms of sale or the settlement, to accommodate some late bidder: Pivirotto's Estate, 64 Pitts. 725.

Furthermore, the court will not permit the courtroom to be turned into an auction room for contending-bidders to attempt to take the property at the lowest price, and any intending bidder who appears the day of the hearing must enter security to comply with the terms of the sale: Mauch's Estate, 47 Pa. C. C. 490. An intending purchaser who has full knowledge of the fact that the property is for sale cannot take advantage of a bona fide proposed purchaser by standing in the background over a long period of time in order to see what the final figure is that the estate will take for the property, and then come in on the day fixed for the hearing on the petition and take the property away from the bona fide purchaser by an offer of a trifling increase.

The intending purchaser, Mr. Byrne, has filed with the court an offer in writing of an increase of $175, and proposes as terms that he will pay within 30 days from the date of the offer (September 1, 1933) the balance due on the property over and above the check for $270 which he submitted with his bid. It was also stated by his counsel at the hearing that he would pay cash immediately after his offer was accepted or enter bond to do so.

The probability of the intending purchaser complying with his offer is also an important consideration. This is true because, if it is improbable that he could comply with his proposed conditions if they were accepted by the court, it would only delay the settlement of the estate and possibly cause the loss of the certain purchaser whose price is now under consideration. What does the evidence show on this point?

We have here, as above stated, a man who knew that this property was for sale by the guardian of the decedent in his lifetime, he being a weak-minded person, since May of 1933, and from then until July 1, 1933, when the decedent died, there is not the slightest evidence that he ever made a definite offer of any kind or upon any conditions to the guardian. He knew of the decedent's death. He knew the attorney for the administrator, and he had an easy way of finding who the administrator was. Again, the testimony proves that at no time did he make either the administrator or his attorney any definite offer whatsoever upon any terms whatsoever. The administrator closed with the purchaser under consideration and filed a petition on August 1, 1933. It was not until the middle of August that he communicated with the administrator, who, in his letter of August 16th, did all he was able to do at that stage of the development by notifying Mr. Byrne to be in court on September 1, 1933.

Mr. Byrne contends that he tried to see Mr. Brecht, referring to his single visit to his office, and that it was not his fault that he was not in. We cannot see that this is any excuse. If he was interested in buying the property, as he claims to have been, it was his duty to find the administrator or his attorney and submit a bona fide bid. There is no evidence that they were in hiding. The importance of this vacillating and negative conduct on the part of the intending purchaser, as a matter of evidence, is its indication of the doubt of his compliance with the terms of the sale, which are cash and cash only, thereby causing delay and the possible loss of the purchaser who is now available and stands ready, willing, and able to pay his cash price. We might easily decide the case on this basis, but it is not necessary, as we have already held that the increase offered is not a substantial one, under all the circumstances, and the proposed private sale as advertised will be finally authorized.

And now, September 21, 1933, the offer of Joseph A. Byrne is rejected and the clerk is directed to return his attorney's check for $270 to his attorney, and the private sale to J. Wayne Heebner will be finally confirmed of even date herewith.

From Aaron S. Swartz, Jr., Norristown, Penna.